IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JORDY STUARD COREA SANCHEZ,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, Secretary, United States Department of Homeland Security; TODD BLANCHE, Attorney General of the United States, Executive Office for Immigration Review; TODD LYONS, Acting Director, United States Enforcement and Removal Operations; EVAN TJADEN, Salt Lake City Field Office Director, Enforcement and Removal Operations, United States Immigration and Customs Enforcement (ICE); MIKE SMITH, in his official capacity as the County Sheriff of Utah County and warden of the Utah County Jail,<br><br>Respondents. | MEMORANDUM DECISION AND ORDER GRANTING PETITION FOR A WRIT OF HABEAS CORPUS<br><br>Case No. 2:26-cv-00904-JNP<br><br>Chief District Judge Jill N. Parrish |

Before this court are petitioner Jordy Stuard Corea Sanchez's petition for a writ of habeas corpus under 28 U.S.C. § 2241 and motion for a temporary restraining order and a preliminary injunction. Dkt. Nos. 1, 4. For the following reasons, the court GRANTS the petition for a writ of habeas corpus and DENIES the motion for a temporary restraining order and a preliminary injunction.

## BACKGROUND

Mr. Corea Sanchez is a citizen and national of Honduras. Dkt. No. 1 ¶ 19. In 2003, when he was approximately two years old, he entered the United States without inspection, and he resided in Utah until his initial detention by Immigration and Customs Enforcement (ICE) in 2025. *Id.* ¶¶ 46–47; Dkt. No. 4, at 4. Mr. Corea Sanchez's initial encounter with ICE occurred on June 12, 2025, immediately following a state conviction related to driving under the influence of alcohol. Dkt. No. 14, at 3. An ICE officer determined that Mr. Corea Sanchez was a removable noncitizen, but on August 8, 2025, an immigration judge in Las Vegas granted Mr. Corea Sanchez bond pending his removal. Dkt. No. 1 ¶ 47. After Mr. Corea Sanchez posted bond and was released from custody, his pending immigration proceedings were transferred to Salt Lake City immigration court. *Id.*

On May 5, 2026, the Board of Immigration Appeals reversed the immigration judge's grant of bond to Mr. Corea Sanchez, reasoning that he was subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). *Id.* ¶ 1. But on June 30, 2026, the Tenth Circuit in *Santillan Quiroz v. Mullin* rejected the reasoning relied upon by the Board of Immigration Appeals. 180 F.4th 1226, 1240 (10th Cir. 2026) ("Based on the statutory text and context, we conclude that § 1225(b)(2)(A)'s application is limited to the border."). Mr. Corea Sanchez was not immediately re-detained following the Board's decision.

Mr. Corea Sanchez's present immigration detention—which is challenged in this action—began on September 29, 2026. Dkt. No. 14, at 3. This detention stems from his September 5 arrest for driving under the influence of alcohol and other associated charges. Dkt. No. 14, at 3. Mr. Corea Sanchez has not been convicted of these charges. Dkt. No. 1, at 2. On September 29, 2026, after he posted bail in his state case, Mr. Corea Sanchez was brought from state custody and taken

into ICE custody pursuant to the immigration warrant issued on September 5, 2026. *Id.* at 4. Although Mr. Corea Sanchez alleges that he was transferred to federal custody pursuant to an immigration detainer, this court has not received any information on when, or on what basis, this detainer was issued.

Mr. Corea Sanchez filed a petition for a writ of habeas corpus and a motion for a temporary restraining order and a preliminary injunction on September 29, 2026. Dkt. Nos. 1, 4. That same day, the court ordered respondents to show cause why Mr. Corea Sanchez's petition for writ of habeas corpus should not be granted. Dkt. No. 7. On October 6, 2026, respondents filed a response and petitioner filed a reply. Dkt. Nos. 14, 15. On October 7, 2026, the court held a hearing on the petition; Mr. Corea Sanchez was present at the hearing. Dkt. No. 16.

**LEGAL STANDARD**

"Preliminary injunctive relief—whether a temporary restraining order or a preliminary injunction—'is an extraordinary remedy never awarded as of right.'" *Schiermeyer ex rel. Blockchain Game Partners, Inc. v. Thurston*, 697 F. Supp. 3d 1265, 1269 (D. Utah Oct. 9, 2023) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). To obtain preliminary relief, a party must show that (1) it "is substantially likely to succeed on the merits"; (2) it "will suffer irreparable injury if the injunction is denied"; (3) its "threatened injury outweighs the injury the opposing party will suffer under the injunction"; and (4) "the injunction would not be adverse to the public interest." *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016).

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the

traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

Under 28 U.S.C. § 2241, a district court has the authority to grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The petitioner bears the burden of demonstrating that his custody is in violation of the law. *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to unlawful detention [under § 2241] is on the petitioner.").

## DISCUSSION

### I. Mr. Corea Sanchez's Petition for a Writ of Habeas Corpus is Granted.

In his petition for a writ of habeas corpus, Mr. Corea Sanchez identifies four "causes of action." First, he argues that the ICE detainer represents an ultra vires agency action that should be set aside under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). Dkt. No. ¶¶ 126–32. Second, he argues that the ICE detainer led to his prolonged state confinement, which resulted in a violation of his Fifth Amendment Due Process rights. *Id.* ¶¶ 133–40. Third, Mr. Corea Sanchez argues that he is entitled to a writ of habeas corpus granting him immediate release from custody. *Id.* ¶¶ 141–46. Fourth, he argues that if the court chooses to grant him a bond hearing instead of immediate release, the government should bear the burden of justifying continued detention. *Id.* ¶¶ 147–53. Because the court grants Mr. Corea Sanchez's habeas petition, the court declines to address his Administrative Procedure Act and due process claims related to the immigration detainer. *Cf. Scott v. Mullin*, 303 F.3d 1222, 1224 (10th Cir. 2002) (declining to address remaining claims in a habeas petition after granting relief on one).

Mr. Corea Sanchez argues that the appropriate remedy is immediate release or a bond hearing at which the government must bear the burden of establishing that continued detention is necessary. Dkt. No. 1 ¶ 117. His argument for immediate release hinges on the concern that merely providing him with "another hearing . . . leaves unanswered how an Immigration Judge would provide effective relief from the Board's outstanding disposition." Dkt. No. 15, at 4. In response to Mr. Corea Sanchez's petition, respondents argue that Mr. Corea Sanchez was offered a bond hearing before an immigration judge, but that he has not yet been given such a hearing because "the box to select a bond redetermination hearing is not marked." Dkt. No. 14, at 4. Respondents maintain that Mr. Corea Sanchez "can still request a bond redetermination either orally when he appears in Court or in writing." *Id.* at 6.

A. *Mr. Corea Sanchez's August 2025 Bond Remains Active.*

The May 2026 Board of Immigration Appeals' decision to vacate Mr. Corea Sanchez's August 2025 bond was premised on the erroneous holding that he "remains subject to detention under INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A), and the Immigration Judge lacked jurisdiction to redetermine his custody." Dkt. No. 15-1, at 5. The Tenth Circuit has since held that § 1225(b)(2)(A) is inapplicable to individuals in Mr. Corea Sanchez's position, which effectively reversed the BIA's decision. *See Santillan Quiroz*, 180 F.4th at 1240 (10th Cir. 2026). Indeed, respondents appear to agree that Mr. Corea Sanchez remained on bond until at least September 2026. *See* Dkt. No. 14, at 5 (admitting that "Petitioner's bond remained unchanged until his present criminal conduct").

Respondents maintain, however, that Mr. Corea Sanchez's bond was somehow revoked when an ICE officer issued an arrest warrant following his September 2026 arrest for state offenses related to driving under the influence. *Id.* But if, as the parties agree, Mr. Corea Sanchez's bond

was active when he was arrested on September 5, 2026, it remains active now. ICE could not unilaterally revoke Mr. Corea Sanchez's bond by issuing an arrest warrant signed by an immigration officer. *See, e.g.*, *Ebu v. Tindall*, No. 3:25-CV-779-RGJ, 2026 WL 252899, at *4 (W.D. Ky. Jan. 30, 2026) (concluding that an arrest warrant issued by a Supervisory Detention and Deportation Officer does not serve a valid method of revoking bond). And respondents have identified no other basis upon which Mr. Corea Sanchez's bond may have been revoked. *See* Dkt. No. 14, at 4 ("Records provided by Respondents to the undersigned counsel thus far do not support Petitioner's assertion that his bond was revoked on May 5, 2026.").

B. *Mr. Corea Sanchez is Entitled to a Pre-Deprivation Hearing.*

Where a noncitizen has been released on bond pursuant to § 1226(a), this court has repeatedly ruled that the noncitizen is "protected by the Due Process Rights created by § 1226(a)." *Martinez Laguna v. Leyva*, No. 2:26-CV-00607-JNP, 2026 WL 1998746, at *4 (D. Utah July 10, 2026); *Peña Becerra v. Sparks*, 2:26-cv-00212-JNP-DBP, 2026 WL 915439, at *4 (D. Utah April 3, 2026). Because Mr. Corea Sanchez's bond remains active, he too is protected by the due process rights created by § 1226(a).

This court has previously analyzed the process owed to noncitizens whose bond the government seeks to revoke. In *Peña Becerra v. Sparks*, Mr. Peña Becerra was released on his own recognizance under § 1226, but he was arrested several years later on state charges for possession of marijuana and for operating a vehicle without a license or valid insurance. 2026 WL 915439, at *3–7. ICE officers detained him after he was released from state custody, and he filed a habeas action seeking immediate release. This court undertook a due process inquiry under *Mathews v. Eldridge*, 424 U.S. 319 (1976), and concluded that "[a] pre-deprivation hearing is warranted." *Peña Becerra*, 2026 WL 915439, at *6. In *Martinez Laguna v. Leyva*, this court reached the same

result and ordered immediate release for a noncitizen who had previously been released on his own recognizance but was subsequently re-detained by ICE after a state arrest for domestic violence. 2026 WL 1998746. Reasoning that "[t]he court's *Mathews v. Eldridge* due process inquiry in *Peña Becerra* remains largely the same," this court ordered Mr. Martinez's release because ICE had failed to provide him with a pre-deprivation hearing. *Id.* at *4–6.

Here too, the court finds that the *Mathews v. Eldridge* due process inquiry commands the same result reached by this court in *Peña Becerra* and *Martinez Laguna*. Mr. Corea Sanchez has a substantial private interest in remaining out of detention on bond, which he has been on for over a year. There is also a significant risk of erroneous deprivation of that liberty interest here because Mr. Corea Sanchez's prior bond grant in 2025 indicates that ICE "necessarily determined" that he "would not pose a danger and was likely to appear for future proceedings." *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1198 (W.D. Wash. 2025). Although Mr. Corea Sanchez has recently been arrested on state charges related to driving under the influence, the fact of arrest does not determine his guilt. Finally, as was also the case in *Peña Becerra* and *Martinez Laguna*, a pre-deprivation hearing would not impose a costly burden on the government or unduly interfere with the government's interests in enforcing immigration law and protecting the public. At bottom, "[i]f the government wishes to re-arrest [Mr. Corea Sanchez] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). A pre-deprivation hearing is thus warranted.

Mr. Corea Sanchez has therefore met his burden of demonstrating that his custody is in violation of the law. *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). The court orders that respondents release Mr. Corea Sanchez.

C. *At any Future Bond Hearings, Respondents Bear the Burden of Establishing That Petitioner is a Flight Risk or Danger to the Community.*

Mr. Corea Sanchez is entitled to immediate release, and if respondents seek to re-detain him in the future, they must provide him with notice and a pre-deprivation hearing. Mr. Corea Sanchez argues that at such bond hearings, the government should bear the burden of establishing his dangerousness and risk of flight. Dkt. No. 1, at 39. Respondents do not address this argument in their response. Dkt. No. 14.

The Supreme Court has reserved ruling on which party bears the burden of proof at § 1226(a) bond hearings, and the Tenth Circuit has not yet had occasion to opine on the issue. *See Jennings v. Rodriguez*, 583 U.S. 281, 312 (2018) (declining to reach burden-of-proof arguments because they were not considered by the lower court); *see also Black v. Almodovar*, 156 F.4th 171, 173–74 (2d Cir. 2025) (Nardini, J., dissenting) (detailing the "circuit splat" of "all-over-the-map holdings" regarding the burden of proof in § 1226(a) bond hearings). Circuits are not only split on which party bears the burden; they are also split on the extent of the burden as well. *Compare Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021) (placing the burden on the government to justify continued detention by "a preponderance of the evidence" for flight risk but "clear and convincing evidence" for dangerousness), *with Velasco Lopez v. Decker*, 978 F.3d 842, 855–56 (2d Cir. 2020) (requiring the government to provide "clear and convincing evidence" for both flight risk and dangerousness).

Other district courts in this circuit applied the tripartite *Mathews v. Eldridge* framework to this determination and have held almost unanimously that the government must bear the burden of proof at § 1226(a) bond hearings. 424 U.S. 319, 335 (1976). *See, e.g.*, *Abanil v. Baltazar*, 817 F. Supp. 3d 1148, 1159 (D. Colo. 2026) (concluding that "it is the Government's burden to 'justify

a noncitizen's continued detention at a bond hearing'" (citations omitted)); *Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1245 (D.N.M. 2025) (applying the *Mathews* and civil detention frameworks to conclude that the burden of proof must be shifted "to the Government to prove, by clear and convincing evidence, that Petitioner is at risk of flight and/or a danger to the community such that continued detention is necessary"); *Arias v. Levya*, 2:26-cv-00812-RJS, 2026 WL 2957987, at *7–8 (D. Utah Oct. 1, 2026) (applying the *Mathews* framework and concluding that the balance of factors weighed in favor of shifting the burden to the government).

As to the extent of the burden the government must bear, "clear and convincing evidence" is the most appropriate standard. "[T]he Supreme Court has long held that the clear and convincing evidence standard applies to civil detention where an individual's liberty interest is at stake." *Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926 (D. Colo. 2025) (citing *United States v. Salerno*, 481 U.S. 739, 751 (1987)). The First Circuit held in *Hernandez-Lara v. Lyons* that a preponderance of the evidence standard was appropriate for flight risk in part because "there is less risk of error from a preponderance standard on this issue because, as noted, detained citizens possess knowledge of many of the most relevant factors." 10 F.4th at 40. This court, however, is conscious that the rapidly changing landscape of immigration detention has made it increasingly difficult for detained noncitizens to effectively access counsel and make arguments at bond hearings. *See, e.g.*, *Andrade v. Mullin*, 2:26-cv-00805-JNP, 2026 WL 2641853, at *2 (D. Utah Sept. 8, 2026) ("During [oral argument], Ms. Andrade's counsel represented that he had been unable to locate or communicate with Ms. Andrade since her transfer to ICE custody."); *Chiriboga v. Mullin*, No. 2:26-cv-00760-JNP, 2026 WL 2797328, at *1–2 (D. Utah Sept. 18, 2026) (detailing the government's inability to locate the individual detained by ICE). In the absence of further direction

from the Tenth Circuit, clear and convincing evidence is the appropriate standard for both risk of flight and danger to community.

If they seek to re-detain Mr. Corea Sanchez, respondents therefore bear the burden of proving by clear and convincing evidence that he is a flight risk or a danger to the community.

## II. Mr. Corea Sanchez's Motion for a Temporary Restraining Order and a Preliminary Injunction is Moot.

Mr. Corea Sanchez also moves for a temporary restraining order and a preliminary injunction (1) ordering his immediate release from custody; (2) enjoining respondents from relying on the challenged ICE detainer, the detention it caused, or the resulting ICE arrest as a basis for his continued detention or re-detention; (3) enjoining respondents from transferring him outside the District of Utah or removing him from the United States while this action is pending; (4) ordering respondents to preserve all relevant documents. Dkt. No. 4, at 12–13.

Mr. Corea Sanchez's first request duplicates his petition for a writ of habeas corpus. His second request is moot because he is no longer being held in state custody pursuant to an ICE detainer. This court's order to show cause already addressed petitioner's third request for a limitation on transfer and a prohibition against removal while this action is pending. Dkt. No. 7, at 4–5 (imposing a prohibition against removal from the United States and a prohibition against transfer beyond a 100-mile radius of the Orrin G. Hatch United States Courthouse). And the fourth request would be duplicative of the obligations already imposed on parties appearing before this court. *See Chiriboga*, 2026 WL 2797328, at *3 (D. Utah Sept. 18, 2026) (explaining that the obligation to preserve documents relevant to future litigation "applies with equal force to electronically stored information and to evidence relevant to habeas petitions").

Mr. Corea Sanchez's motion for a temporary restraining order and a preliminary injunction is therefore DENIED AS MOOT.

**CONCLUSION AND ORDER**

For the foregoing reasons, the court ORDERS that:

1. Petitioner Jordy Stuard Corea Sanchez's petition for writ of habeas corpus is GRANTED. Dkt. No. 1.
2. Petitioner's motion for a temporary restraining order and a preliminary injunction is DENIED AS MOOT. Dkt. No. 4.
3. Respondents are ORDERED to either immediately release Mr. Corea Sanchez or to release Mr. Corea Sanchez in Salt Lake City as soon as practical and without undue delay, based on Mr. Corea Sanchez's preference. If applicable, respondents must provide a status report within 48 hours detailing the release plan and any associated timeline. Respondents must also provide a status report informing the court of Mr. Corea Sanchez's release within 24 hours of the release.
4. Respondents are ORDERED, at the time of release, to provide him any personal effects and identification documents that were confiscated from him.
5. Respondents are ENJOINED from imposing further restraints on liberty (e.g., electronic monitoring) that were not imposed on Mr. Martinez prior to his 2026 arrest, unless those restraints are determined to be necessary at a future pre-deprivation or custody hearing. Mr. Martinez must be released to the same legal status and conditions he enjoyed prior to the 2026 arrest.
6. If Respondents seek to re-detain Mr. Corea Sanchez, absent exigent circumstances, they must provide Mr. Corea Sanchez notice of at least seven days before a pre-deprivation

hearing before an immigration judge in which the government bears the burden of establishing by clear and convincing evidence that Mr. Corea Sanchez is a flight risk or danger to the community.

7. Respondents are ENJOINED from denying petitioner bond on the basis that he is subject to detention under 8 U.S.C. § 1225(b)(2).

DATED October 13, 2026.

BY THE COURT

Jill N. Parrish
Chief United States District Court Judge
District of Utah